A95A1233. STUDARD v. DEPARTMENT OF
TRANSPORTATION et al.
(466 SE2d 236)

RUFFIN, Judge.

Martha Studard sued the Georgia Department of Transportation ("DOT") and four DOT employees for injuries she sustained in an automobile collision on a DOT road construction site. The jury returned a verdict in favor of the defendants. Studard appeals, enumerating as error the trial court's refusal to admit certain evidence. For reasons which follow, we affirm.

The collision occurred in a highway construction zone where a DOT contractor was resurfacing the road. Beginning 1,500 feet before both ends of the construction zone, signs were placed every 500 feet warning of the construction zone and containing advisory speed limits. Throughout the zone signs also warned of lane closures and flagmen. There was a pilot car with a sign reading "follow me" to lead drivers around the paving operation, and signs instructed drivers to merge due to a lane drop. Because all previous road markings were covered with new asphalt, temporary lane and centerline markings were put in place. Along that portion of the highway where the accident occurred, there were such temporary markings delineating one southbound and two northbound lanes. The accident occurred when a southbound vehicle veered off the roadway, traveled approximately 250 feet on the shoulder of the road and suddenly crossed over the centerline and one northbound lane, colliding head-on with Studard's northbound car.

It is undisputed that another accident occurred approximately 500 feet south of the location of Studard's accident four days before Studard's accident. It is also undisputed that the day after Studard's accident, the DOT placed "low shoulder" signs throughout the project and white pavement edge line in the area of both collisions. The court granted defendants' motions in limine prohibiting the introduction of any evidence concerning either the prior accident or the remedial

measures taken by defendants immediately after Studard's accident. Although the transcript of the motion hearing is not included in the appellate record, in an order denying Studard's motion for reconsideration, the trial court ruled that Studard made "an inadequate showing of substantial similarity between the two collisions." Accordingly, the court found "that the introduction of evidence of the [prior] collision would not fall within the limited evidentiary exception to the general rule of inadmissibility of prior events." The court also ruled, without explanation, that the defendants' motions in limine regarding the subsequent remedial measures were granted.

1. In her first two enumerations of error, Studard asserts the court erred in granting the defendants' motions in limine. We find no error.

" 'The burden is on the party alleging error to show it affirmatively by the record. (Cits.)' [Cit.] . . . Unfortunately for [Studard], there is no transcript of the . . . hearing [on the motions]. 'Without a transcript of the evidence presented, we will in keeping with very old authority in this state presume in favor of public officers, in the absence of all proof to the contrary, that they discharged their duty in compliance with the law. [Cits.]' " *Gillespie v. Gillespie*, 259 Ga. 838 (388 SE2d 688) (1990). Thus, we must assume as a matter of law that the evidence adduced at the hearing on defendants' motions in limine supported the trial court's rulings. Id. See also *Gay v. State*, 199 Ga. App. 80 (1) (403 SE2d 895) (1991).

2. During the trial, Studard again tried to present evidence showing that after the accident, DOT employee and co-defendant Ben Hess directed the placement of the white edge line along the southbound shoulder of the roadway in the immediate vicinity of both accidents. Although this evidence had already been ruled inadmissible by the court's ruling on the defendants' motions in limine, Studard contends that it should have been admissible for impeachment purposes because Hess testified that the traffic controls in place at the time of the accident were adequate. We disagree.

The record shows that during Studard's cross-examination of Hess, the following exchange took place: "Q: Would it be fair to say that you felt that the traffic controls in place at any time you drove through prior to September the 10th, 1986 were adequate? A: I didn't see anything that jumped out as being inadequate, no, sir. Q: Your answer is they were adequate? A: Yes, sir."

Generally, " '[e]vidence of subsequent repairs following an injury is not admissible on the trial of negligence cases, the usual purpose of such evidence being as a basis for drawing the inference that the defendant thereby impliedly admitted his realization of negligence. [Cits.]' [Cits.]" *Chastain v. Fuqua Indus.*, 156 Ga. App. 719, 722 (3) (275 SE2d 679) (1980). The reason for excluding such evidence lies in

sound public policy "that men should be encouraged to improve, or repair, and not be deterred from it by the fear that if they do so their acts will be construed into an admission that they had been wrong-doers." *Ga. Southern &c. v. Cartledge*, 116 Ga. 164, 168 (1) (42 SE 405) (1902). Although we have allowed certain exceptions to this rule, we have only suggested in dicta that evidence of subsequent remedial measures may be used for impeachment purposes. See *Chastain*, supra.

While our decision here is not intended to proscribe such use of subsequent remedial evidence in future cases, we do not believe the trial court erred in excluding it here. Federal cases addressing the use of such evidence under Fed. R. Evid. 407 provide valuable insight. In *Hardy v. Chemetron Corp.*, 870 F2d 1007 (5th Cir. 1989), the court warned against the admission of such evidence to prove prior negligence under the guise of impeachment: "This exception must be applied with care, since any evidence of subsequent remedial measures might be thought to contradict and so in a sense impeach a party's testimony that he was using due care at the time of the accident. . . . If this counted as 'impeachment' the exception would swallow the rule." (Citation and punctuation omitted.) Id. at 1011. See also *Bickerstaff v. South Central &c. Co.*, 676 F2d 163 (5th Cir. 1982) (citing authorities that urge limitations on the use of subsequent repair evidence for impeachment purposes).

Heeding the warning in *Hardy* and deferring to the discretion the trial judge has in deciding such evidentiary matters, we find no abuse of discretion. We note that if we found the evidence admissible in this case, defendants would be required to either admit their negligence or face the admission of subsequent repair evidence. That is, Studard's question to Hess concerning the adequacy of traffic controls was in essence an inquiry into whether Hess believed he was negligent in placing inadequate traffic controls on the roadway. Hess had but two choices in answering the question, either state that the controls were adequate or state that they were inadequate, thereby admitting his own and DOT's negligence. If we were to allow the subsequent repair evidence to contradict and impeach Hess's testimony under these circumstances, the exception would indeed swallow the rule.

Moreover, "[a] trial judge has the discretion to exclude even relevant evidence if he finds that its probative value is substantially outweighed by the risk that its admission will unduly prejudice or mislead the jury or confuse the issues being tried. [Cits.]" *Kilpatrick v. Foster*, 185 Ga. App. 453, 456 (3) (364 SE2d 588) (1988). Considering the extremely prejudicial nature of the evidence sought to be admitted here, the trial court did not abuse its discretion in refusing to admit it.

3. In her last enumeration of error, Studard contends the trial

court erred in precluding her from arguing that the state waived its sovereign immunity to the extent its agencies and employees were covered by insurance. However, Studard has not cited any portion of the record showing that she requested to make such an argument, or more importantly, that the trial court denied such a request. Court of Appeals Rule 27 (c) (3) (i) requires that "[e]ach enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of such reference, the Court *will not search for or consider such enumeration.*" (Emphasis supplied.) That vexing and vexatious search for error through an appellate record where no citation is in appellant's brief is not the function of appellate judges. Accordingly, this enumeration presents nothing for consideration. See *Crowder v. State*, 218 Ga. App. 630, 632 (3) (462 SE2d 754) (1995).

*Judgment affirmed. Beasley, C. J., concurs specially. Pope, P. J., concurs.*

BEASLEY, Chief Judge, concurring specially.

I concur fully in Divisions 1 and 3 but not in all that is contained in Division 2; I concur in its ruling.

DECIDED DECEMBER 5, 1995 —
RECONSIDERATION DENIED DECEMBER 20, 1995 — ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

*Mundy & Gammage, John S. Husser, Robert K. Finnell*, for appellant.

*Michael J. Bowers, Attorney General, George P. Shingler, Senior Assistant Attorney General, C. Latain Kell, Assistant Attorney General, Gerard & Matthews, William T. Gerard, Susan J. Levy*, for appellees.